**UNITED STATES SECURITIES and EXCHANGE COMMISSION, Plaintiff,**

v.

**Richard VERDIRAMO, Vincent L. Verdiramo, Esq., Edward Meyer, Jr., and Victoria Chen, Defendants.**

No. 10 Civ. 1888 (RMB).

United States District Court, S.D. New York.

Sept. 9, 2011.

Beth Collier Groves, Dean Michael Conway, U.S. Securities and Exchange Commission, Washington, DC, for Plaintiff.

Victoria Chen, Vancouver, BC, pro se.

## DECISION & ORDER

RICHARD M. BERMAN, District Judge.

### I. Introduction

On March 10, 2010, the United States Securities and Exchange Commission ("SEC") filed a complaint ("Complaint") against Vincent L. Verdiramo, Esq., an attorney licensed to practice law in the State of New Jersey and a partner in Verdiramo & Verdiramo P.A.; Richard Verdiramo, former Chairman, Chief Exec-

utive Officer, President, and Chief Financial Officer of RECOV Energy Corporation ("RECOV"); Edward Meyer, Jr. ("Meyer"), Principal of Xcel Associates, a New Jersey corporation; and Victoria Chen ("Chen"), Principal of Greenwood Capital Holdings, Inc., a Nevada corporation (collectively, "Defendants"). (Compl., dated Mar. 9, 2011, ¶¶ 14–17.) The SEC alleges, among other things, that Defendants sold shares of RECOV "in unregistered, non-exempt transactions" in violation of Section 5 of the Securities Act of 1933, 15 U.S.C. § 77e(a) ("Securities Act"). The SEC further alleges that Defendants violated Sections 10(b) and 13(b)(5) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78m(b)(5) ("Exchange Act"), and Rules 10b–5 and 13b2–1 promulgated thereunder, 17 C.F.R. §§ 240.10b–5, 240.13b2–1; and that Richard Verdiramo violated Sections 13(a), 13(d), and 16(a) of the Exchange Act, 15 U.S.C. §§ 78m(a), 78m(d), 78p(a), and Rules 13a–1, 13a–13, 13d–1, 13d–2, and 16a–3 promulgated thereunder, 17 C.F.R. §§ 240.13a–1, 240.13a–13, 240.13d–1, 240.13d–2(a), 240.16a–3. (Compl. ¶¶ 1, 10.) [1]

On December 23, 2010, the SEC moved for partial summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), with respect to the Section 5, Section 13(d), and Section 16(a) claims. [2] The SEC argues, among other things, that (1) Vincent Verdiramo and Chen "directly," and Richard Verdiramo "indirectly," sold "hundreds of thousands" of RECOV shares in unlawful unregistered transactions, in violation of Section 5; and (2) Richard Verdiramo vio-

---

**1.** On April 7, 2011, Meyer and the SEC entered into a settlement agreement permanently enjoining Meyer from violations of Section 5 of the Securities Act and Section 10(b) of the Exchange Act; ordering Meyer to pay disgorgement in the amount of $62,050; and dismissing Meyer from this action. (*See* Con-

sent of Meyer, dated Apr. 7, 2011, ¶ 2; Final J. as to Meyer, dated June 27, 2011.)

**2.** The SEC did not move for summary judgment with respect to its claims for violations of Sections 10(b), 13(a), or 13(b)(5).

lated Sections 13(d) and 16(a) by failing to report to the SEC his acquisition of 6.1 million shares of RECOV stock and the change in his beneficial ownership of RE-COV. (SEC Mem. at 6–9.) The SEC seeks permanently to enjoin Vincent Verdiramo, Richard Verdiramo, and Chen from future violations of Section 5 and permanently to enjoin Richard Verdiramo from future violations of Sections 13(d) and 16(a). It also seeks disgorgement of Vincent Verdiramo, Richard Verdiramo, and Chen's "ill-gotten gains." (SEC's Mem. in Supp. of Mot. for Partial Summ. J., dated Dec. 23, 2010 ("SEC Mem."), at 9; Compl. ¶ 9.)

On April 11, 2011, Vincent and Richard Verdiramo filed an opposition arguing, among other things, that (1) Vincent and Richard Verdiramo did not violate Section 5 because Vincent Verdiramo's sales of RECOV shares—in which the SEC alleges Richard Verdiramo was "indirectly" involved—fell within the "safe harbor" provisions of Rule 144(k), 17 C.F.R. § 230.144(k); and (2) Richard Verdiramo did not violate Sections 13(d) and 16(a) because his acquisition of 6.1 million RE-COV shares did not change his beneficial ownership of RECOV but occurred "solely to [pass] control of RECOV [to Carbon Recovery Corp ('CRC')] if a merger [between RECOV and CRC] took place." (Mem. of Defs. Vincent Verdiramo and Richard Verdiramo in Opp'n to SEC Mot. for Partial Summ. J., dated Apr. 11, 2011 ("Defs. Mem."), at 15, 17–18.) Vincent and Richard Verdiramo also argue that there are no grounds for any equitable relief against them because, among other reasons, "partial summary judgment on the SEC's substantive claims is unwarranted."

(Defs. Mem. at 18.) They include in their opposition the purported expert report of attorney Robert D. Axelrod, dated December 22, 2010 ("Axelrod Report").[3]

Chen, who is proceeding *pro se*, has not submitted an opposition to the SEC's motion for partial summary judgment. Chen initially appeared in this matter through her counsel, Gregory Bartko ("Bartko"). (*See* Order for Admission *Pro Hac Vice* of Gregory Bartko, Esq., dated June 1, 2010 [# 16].) At a status conference on January 6, 2011, the Court was advised that Bartko had been suspended from the practice of law because he "had been convicted" of various crimes, including the unlawful sale of unregistered securities in violation of Section 5 of the Securities Act, in the United States District Court for the Eastern District of North Carolina. (*See* Tr. of Proceedings, dated Jan. 6, 2011, at 2:19–20; Tr. of Proceedings, dated Feb. 24, 2011); *see also United States v. Bartko*, No. 09 Crim. 321 (E.D.N.C.)

On May 9, 2011, the SEC filed a reply arguing, among other things, that Vincent Verdiramo's unregistered transactions did not qualify for safe harbor treatment under Rule 144(k)—which allows "a person who is not an affiliate of the issuer" to sell shares in unregistered transactions provided that the seller (together with any prior holder of shares with whom the seller can "tack" under Rule 144(d)(3)(ii)) has held those shares for "at least two years." (SEC Reply Mem. in Supp. of Mot. for Partial Summ. J., dated May 9, 2011 ("SEC Reply"), at 4–8); 17 C.F.R. § 230.144(d), (k). First, Vincent Verdiramo could not satisfy Rule 144(k)'s two-year holding requirement because he personally held the

---

**3.** Axelrod received a Juris Doctor from the University of Houston in 1973 and is admitted to practice law in the State of Texas. (*See* Axelrod Report, Ex. A.) He was "employed by the Securities and Exchange Commission as a staff attorney from 1973–1976 and thereafter ha[s] been in the private practice of law," with his "primary area of expertise [in] securities regulation." (Axelrod Report at 1, 4 & Ex A.)

shares for less than one year, and because the person whose holding period Vincent Verdiramo sought to "tack" onto "never sold or gave her shares to V[incent] Verdiramo," thereby "end[ing] any 'tacking' claim." (SEC Reply at 4–8.) Second, Vincent Verdiramo was an affiliate of RECOV at the time he engaged in the unregistered sales of RECOV shares, and "an affiliate cannot . . . cannot rely on Rule 144(k)." (SEC Reply at 8.) The SEC also argues that the Axelrod Report "should . . . be excluded or disregarded as impermissible expert opinion on the law." (SEC Reply at 6; *see also* SEC's Mem. of Law in Supp. of Mot. *in Limine* to Exclude Axelrod Report, dated May 9, 2011 ("SEC Expert Mem."), at 1 ("The Axelrod Report is the quintessential legal argument by an attorney in the guise of 'expert' opinion," and "fails other tests of reliability and relevance under the Federal Rules of Evidence.").)

The parties waived oral argument. (*See* Tr. of Proceedings, dated Nov. 15, 2010.)

**For the reasons set forth below, the SEC's motion for partial summary judgment is granted.**

## II. Background

The following facts are not in dispute:

(i) at all relevant times, RECOV (formerly Interactive Multimedia Network, Inc. ("IMNI")) was a "reporting company" under Section 12 of the Exchange Act, 15 U.S.C. § 78*l*.[4] As a reporting company, RECOV was required to file with the SEC reports disclosing the "acquisition or disposition of shares equal to or greater than one percent of . . . total outstanding stock" and "changes in [the beneficial] ownership" of the company (SEC Statement of Material Facts, dated Dec. 23, 2010 ("SEC 56.1"),

¶ 29; SEC Mem. at 8–9; Counter–Statement Pursuant to Local Civil R. 56.1 of Defs. in Opp'n to SEC Mot. for Partial Summ. J., dated Apr. 11, 2011 ("Defs. 56.1") ¶ 29);

(ii) RECOV was founded in March 1994 by Vincent Verdiramo, who served as its Chairman, Chief Executive Officer, and President until March 1, 2000. Since March 2000, Vincent Verdiramo has served "as counsel for RECOV on numerous matters" (SEC 56.1 ¶¶ 8, 9; Defs. 56.1 ¶¶ 8, 9);

(iii) in addition to his role as counsel, in December 2004 and January 2005, Vincent Verdiramo had "discussions" with Meyer which "result[ed]" in Meyer "agree[ing] to purchase control of [RECOV] for $825,000." As of March 31, 2005, Vincent Verdiramo also held $255,935 in RECOV debt, constituting 64% of RECOV's total outstanding notes and 42% of RECOV's outstanding liabilities. And, between 1999 and 2005, Vincent Verdiramo also repaid $140,000 of RECOV's corporate debt out of his own assets (Decl. of Vincent L. Verdiramo in Opp'n to Pl.'s Mot. for Partial Summ. J., dated Apr. 11, 2011 ("Vincent Verdiramo Decl."), ¶ 13–14; Richard Verdiramo Decl. ¶ 28; Ex. 21 R to Decl. of Dean M. Conway in *Supp.* of SEC's Mot. for Partial Summ. J., dated Dec. 23, 2010 ("Conway Decl."));

(iv) as of March 31, 2005, Vincent Verdiramo's wife, Marion Verdiramo, owned 3.4 million shares of RECOV common stock, making her the largest single holder of RECOV shares at the time (Richard Verdiramo Decl. ¶ 38);

(v) at all relevant times, RECOV "share[d office] space" with Vincent Verdiramo's law firm, Verdiramo & Verdiramo P.A., which had "agreed not to charge rent [to RECOV] and [wa]s not expecting pay-

---

**4.** IMNI changed its name to RECOV in 2005. (Decl. of Def. Richard Verdiramo in Opp'n to

Pl.'s Mot. for Partial Summ. J., dated Apr. 11, 2011 ("Richard Verdiramo Decl."), ¶¶ 7, 39.)

ment from [RECOV] for the office use" (Conway Decl. Ex. 21R, at 5);

(vi) between 2000 and 2006, Richard Verdiramo, who is Vincent Verdiramo's son, served as the Chairman, Chief Executive Officer, President, and Chief Financial Officer of RECOV (*see* SEC 56.1 ¶ 1; Defs. 56.1 ¶ 1);

(vii) prior to April 7, 2005, Richard Verdiramo "owned, directly or indirectly, greater than five percent of outstanding RECOV common stock" (SEC 56.1 ¶ 26; Defs. 56.1 ¶ 26; Richard Verdiramo Decl. ¶ 38; Conway Decl. Ex. 21R);

(viii) on April 7, 2005, Richard Verdiramo, in his capacity as President, signed a resolution on behalf of the RECOV Board of Directors ("April 7, 2005 Resolution") authorizing RECOV's transfer agent, Jersey Transfer and Trust ("Transfer Agent"), to issue "2,032,290 ... free trading shares of [RECOV] [c]ommon [s]tock to [certain] individuals." The April 7, 2005 Resolution also authorized the Transfer Agent to issue "6,100,000 shares of restricted common stock [to Richard Verdiramo] for services rendered [as] its President" (SEC 56.1 ¶¶ 12–13; Defs. 56.1 ¶¶ 12–13);[5]

(ix) Irving Rothstein, Esq., an attorney retained by RECOV to provide an opinion on the April 7, 2005 Resolution, wrote a letter to the Transfer Agent, dated April 7, 2005 ("Rothstein Opinion"), concluding that "[t]he proposed issuance [of certain RECOV shares in the April 7, 2005 Resolution] ... appears to meet the requirements of Rule 144 for tacking" (Richard Verdiramo Decl. ¶ 43);

(x) by separate letter to the Transfer Agent, dated April 7, 2005, Vincent Verdiramo, also as "counsel to RECOV," opined

that the April 7, 2005 Resolution's proposed issuance of 6.1 million shares to Richard Verdiramo was "allowable" under federal securities law (Conway Decl. Ex. 20R, at 1);

(xi) on April 8, 2005, pursuant to the April 7, 2005 Resolution, the Transfer Agent issued 1,756,000 free trading shares of RECOV common stock as follows: 333,- 334 shares to Edward Meyer; 150,000 shares to Marie Meyer, Edward Meyer's daughter; 183,333 shares to Ross Laterra, Edward Meyer's step-son; 333,333 shares to Greenwood Capital Holdings, Inc., a company controlled by Chen; 126,000 shares to Public Entity Acquisition Corp., a company controlled by Vincent and Richard Verdiramo; 300,000 shares to Illuminate International Corp., a company controlled by Vincent Verdiramo; and 330,000 shares to Worldwide Connect, LLC, a company controlled by individuals with whom Vincent and Richard Verdiramo had previously worked (*see* SEC 56.1 ¶ 15; Defs. 56.1 ¶ 15);

(xii) on April 8, 2005, the Transfer Agent "issued 6,100,000 shares of restricted common stock to [Richard Verdiramo]." This number of shares accounted for "more than 70% of [RECOV's] ... outstanding shares" at the time (SEC 56.1 ¶¶ 14, 27; Defs. 56.1 ¶¶ 14, 27);

(xiii) Richard Verdiramo did not report to the SEC his acquisition of the 6,100,000 shares of RECOV stock described in paragraph (xii) above, nor did he timely report to the SEC any change in his beneficial ownership of RECOV (SEC 56.1 ¶¶ 28, 30– 31; Defs. 56.1 ¶¶ 28, 30–31);

(xiv) on May 26, July 18, and July 22, 2005, respectively, Richard Verdiramo signed three other RECOV Board of Di-

---

**5.** Restricted securities are "[s]ecurities acquired directly or indirectly from the issuer or from an affiliate of the issuer, in a transaction

or chain of transactions not involving any public offering." 17 C.F.R. § 230.144(a)(3)(i).

rectors resolutions authorizing the Transfer Agent to issue, collectively, 1,491,495 free trading shares of RECOV common stock to four separate entities and three individuals (SEC 56.1 ¶¶ 16–18; Defs. 56.1 ¶¶ 16–18);

(xv) on May 26, July 19, and July 22, 2005, respectively, the Transfer Agent issued 1,491,495 free trading shares of RECOV common stock pursuant to the resolutions referred to in paragraph (xiv) above (SEC 56.1 ¶ 19, Defs. 56.1 ¶ 19; Conway Decl. Exs. 8R, 9R, 10R);

(xvi) at all relevant times, Richard Verdiramo sent the Transfer Agent written instructions "by facsimile" and the Transfer Agent "used the mails to distribute the share certificates to the intended recipients" (SEC 56.1 ¶¶ 20, 24; Defs. 56.1 ¶¶ 20, 24);

(xvii) between July 20 and September 13, 2005, Chen sold 158,333 RECOV shares (which she had received through the April 7, 2005 Resolution) "in [fifteen] unregistered transactions through her interstate brokerage account" (SEC 56.1 ¶ 32; Conway Decl. Ex. 19R; SEC Reply at 11, 12 n. 10);

(xviii) between July 15, 2005 and February 6, 2006, Vincent Verdiramo sold 109,-000 RECOV shares (which he had received through the April 7, 2005 Resolution) "in [nineteen] unregistered transactions through his company Illuminate Corp. through his interstate brokerage account" (SEC 56.1 ¶ 36; Defs. 56.1 ¶ 36; Conway Decl. Ex. 14R; SEC Reply at 3 n. 3, 12 n. 10);

(xix) no registration statement was on file or in effect with the SEC for any of the transactions involving RECOV stock referred to in paragraphs (xvii) and (xviii) above (SEC 56.1 ¶ 21; Defs. 56.1 ¶ 21); and

(xx) Defendants did not file a notice of proposed sale, *i.e.,* Form 144, for the period during which the sales of the securities referred to in paragraphs (xvii) and (xviii) above occurred, *i.e.,* between January 1 and December 31, 2005 (SEC 56.1 ¶ 25; Defs. 56.1 ¶ 25).[6]

## III. Legal Standard

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *SEC v. Empire Dev. Grp., LLC,* No. 07 Civ. 3896, 2008 WL 2276629, at *6 (S.D.N.Y. May 30, 2008). "[T]he SEC, as the moving party, bears the initial burden of showing 'the absence of a genuine issue of material fact.'" *SEC v. Softpoint, Inc.,* 958 F.Supp. 846, 859 (S.D.N.Y.1997) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). "Where a moving party meets that initial burden, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

"The purpose of the [Section 5] registration requirement, and of the Securities Act as a whole, is to 'protect investors by promoting full disclosure of information thought necessary to informed investment decisions.'" *Id.* (citing *SEC v. Ralston Purina Co.,* 346 U.S. 119, 124,

---

6. At all relevant times, Rule 144(h) required that a Form 144 be filed with the SEC "[i]f the amount of securities to be sold in reliance upon the rule ... has an aggregate sale price in excess of $10,000." 17 C.F.R. § 230.144(h). Rule 144(h) was amended in 2008 to require the filing of a Form 144 for securities sold with "an aggregate sale price in excess of $50,000." 17 C.F.R. § 230.144(h).

73 S.Ct. 981, 97 L.Ed. 1494 (1953)). "Registration exemptions are construed strictly to promote full disclosure of information for the protection of the investing public." *SEC v. Cavanagh*, 445 F.3d 105, 115 (2d Cir.2006) ("*Cavanagh III* "); *see also SEC v. Kern*, 425 F.3d 143, 148 (2d Cir.2005) ("*Kern II* ").

"When a motion for summary judgment is unopposed, ... 'the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.'" *Empire*, 2008 WL 2276629, at *7 (citing *Vt. Teddy Bear Co. v. 1–800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir.2004)).

## IV. Analysis

### Objections to the Magistrate Judge's July 26, 2011 Order

 Preliminarily, Vincent and Richard Verdiramo, on August 8, 2011, filed objections to an order issued July 26, 2011 by United States Magistrate Judge Andrew J. Peck, to whom the matter had been referred for general pretrial purposes. Judge Peck's July 26, 2011 order denied Vincent and Richard Verdiramo's motion, filed July 20, 2011 without a supporting memorandum of law, to "dismiss[ ] the complaint in this action," or, "in the alternative," to "preclud[e] [the SEC] from offering evidence that [D]efendants were not entitled to rely on the exemption available under ... Rule 144," as a sanction for the SEC's late production of documents in this action. (Not. of Mot., dated July 20, 2011, at 1.) Judge Peck concluded, among other things, that Vincent and Richard Verdiramo had "not demonstrated *prejudice* by the SEC's late production of the material," and presented "absolutely no detail as to the contents of the late-produced documents or how earlier production would

have benefitted [them]." (Judge Peck's Order, dated July 26, 2011, at 1–2 (emphasis in original).)

Vincent and Richard Verdiramo argue that Judge Peck "embraced fully the SEC's self-serving justification that the 13,000 [late-produced] documents were irrelevant and that the non-disclosure entailed no prejudice to the Verdiramo[s]." (Objections, dated Aug. 8, 2011, at 1.) They do not argue, let alone establish, that the late disclosure of documents was prejudicial to them, *see Monaghan v. SZS 33 Assocs., L.P.*, 148 F.R.D. 500, 508–09 (S.D.N.Y.1993), or that Judge Peck's "determination was 'clearly erroneous or contrary to law,'" *Dubin v. E.F. Hutton Grp., Inc.*, 125 F.R.D. 372, 373 (S.D.N.Y.1989); *Flaherty v. Filardi*, No. 03 Civ. 2167, 2009 WL 749570, at *19 (S.D.N.Y. Mar. 20, 2009) ("The clearly erroneous standard is highly deferential, and magistrate judges are afforded broad discretion in resolving non-dispositive disputes ...." (internal quotation marks and alterations omitted)); *Weiss v. La Suisse*, 161 F.Supp.2d 305, 321 (S.D.N.Y.2001); *see* Fed.R.Civ.P. 72(a); (SEC's Opp'n to Objections, dated Aug. 15, 2011, at 1 ("[Vincent and Richard Verdiramo] merely repeat [the] conclusory arguments of generalized harm, emphasize the number of documents at issue ... and seek sanctions that have no rational connection to the event in question.")) Judge Peck's conclusion that "case-ending sanctions" were not appropriate was reasonable and certainly well within his broad discretion. (Judge Peck's Order at 2); *Dubin*, 125 F.R.D. 372, at 373–74; *see Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764 (2d Cir.1990); *Moss v. Enlarged City Sch. Dist. of the City of Amsterdam*, 166 F.Supp.2d 668, 671 (N.D.N.Y. 2001) ("[The] Magistrate Judge['s] determination as to whether or not to impose discovery sanctions under these circum-

stances was well within his broad discretion."); *Livshits v. Natural Y Surgical Specialties, Inc.*, No. 87 Civ. 2403, 1990 WL 151141, at *3 (S.D.N.Y. Sept. 27, 1990).

### Axelrod Report

The SEC contends that the Axelrod Report should be excluded for the following reasons: First, it contains "just the type of legal argument by an attorney not permitted in this Circuit as expert opinion." (SEC Expert Mem. at 3); *see United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir.1991) ("[T]estimony encompassing an ultimate legal conclusion based upon the facts of the case is not admissible."); *Feinberg v. Katz*, No. 01 Civ. 2739, 2007 WL 4562930, at *8 (S.D.N.Y. Dec. 21, 2007). Second, "[t]here is nothing reliable about Axelrod's methodology" because, although "[h]e states his opinion based upon [his] 'knowledge and experience as an attorney,'" "[t]he issue of whether [D]efendants violated Section 5 of the Securities Act, or qualified for the Rule 144 safe harbor, is not a matter of 'knowledge and experience'" but "is a matter of controlling case law." (SEC Expert Mem. at 3, 6 ("[Axelrod's] interpretation is nothing more than his own personal and subjective inferences, which is likewise improper for an expert.")); *see Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir.1992). And third, "nowhere in [Axelrod's] 'Curriculum Vitae' does it say that Axelrod has ever before been qualified by a Court or other tribunal as an expert." (SEC Expert Mem. at 5 ("Of all the securities experts in the New York area, the Verdiramos went to Houston,

Texas to find Mr. Axelrod to give this 'expert opinion.'").) [7]

The Axelrod Report does not help Vincent and Richard Verdiramo's cause because, as the Court concludes below, the transactions at issue were not exempt from Section 5 registration under Rule 144(k). The securities sold by Vincent Verdiramo in 2005 and early 2006 clearly were not held by him for the two years required under Rule 144(k). *See supra* ¶¶ xi, xviii; *see infra* pages 269–70; 17 C.F.R. § 230.144(k). And, it is indisputable that Vincent Verdiramo was an "affiliate" of RECOV at the time of his unregistered sales of RECOV stock. *See supra* ¶¶ ii-v, x; *see infra* pages 270–71; 17 C.F.R. § 230.144(k).

### Motion to Strike

The SEC also moves to strike Vincent and Richard Verdiramo's declarations, dated April 15, 2011, because, among other reasons, the "declaration[s do not] state that the statements are 'true and correct'" as required by 28 U.S.C. § 1746, and because they "contain information largely irrelevant to the issue of [their] liability under Section 5." (SEC Reply at 7 n. 7.) As discussed below, the SEC is entitled to judgment as a matter of law and "[t]he Court need not strike or otherwise disregard the declarations submitted by [Defendants] ... to reach this conclusion. Consequently, Plaintiffs' motion to strike all or part of these declarations is moot." *Fraser v. Fiduciary Trust Co. Int'l*, No. 04 Civ. 6958, 2009 WL 2601389, at *1 n. 2 (S.D.N.Y. Aug. 25, 2009).

7. Notwithstanding the cogency of the SEC's arguments, by memo endorsement, dated May 11, 2011, the Court has already denied the SEC's motion to exclude the Axelrod Report "for failure to comply with the Court's Individual Rules." (Memo Endorsement, dated May 11, 2011.) "[A]ny such motion should have been filed with the underlying papers."

(Memo Endorsement, dated May 11, 2011); *see also Brenord v. Catholic Med. Ctr. of Brooklyn & Queens, Inc.*, 133 F.Supp.2d 179, 188 n. 4 (E.D.N.Y.2001) ("The ability of a district court to evaluate expert testimony *sua sponte* and exclude such testimony where appropriate has been recognized by several courts.") (collecting cases).

### Section 5 Claims

■ Section 5 provides that it is unlawful for any person to use the channels of interstate commerce to sell a security unless a registration statement is in effect as to such security. *See SEC v. Cavanagh,* 155 F.3d 129, 132–33 (2d Cir.1998) (*"Cavanagh I "*). "To establish a prima facie violation of Section 5, the SEC must prove three elements: (1) that no registration statement was in effect for the securities; (2) that the defendant directly or indirectly sold or offered to sell the securities; and (3) that interstate means were used in connection with the offer or sale." *SEC v. Cavanagh,* No. 98 Civ. 1818, 2004 WL 1594818, at *16 (S.D.N.Y. July 16, 2004) (*"Cavanagh II "*) (citing *Europe & Overseas Commodity Traders v. Banque Paribas London,* 147 F.3d 118, 124 n. 4 (2d Cir.1998)). "Once the SEC has [established] a prima facie case, the burden shifts to the defendant to show that the securities were exempt from the registration requirement." *Id.*

### Vincent Verdiramo

■ The SEC clearly has established a prima facie violation of Section 5 by Vincent Verdiramo. *See Softpoint,* 958 F.Supp. at 861; *see also SEC v. Tecumseh Holdings Corp.,* No. 03 Civ. 5490, 2009 WL 4975263, at *4 (S.D.N.Y. Dec. 22, 2009). No registration statement was filed or in effect in 2005 or early 2006 covering Vincent Verdiramo's sales of RECOV shares. *See supra* ¶ xix; (*see* SEC 56.1 ¶ 21; Defs. 56.1 ¶ 21.) Vincent Verdiramo sold 109,-000 RECOV shares between July 15, 2005 and February 6, 2006. *See supra* ¶ xviii; (*see* SEC 56.1 ¶ 36; Defs. 56.1 ¶ 36.) And, such sales were conducted by interstate means through Vincent Verdiramo's brokerage account. *See supra* ¶ xviii; (*see* SEC 56.1 ¶¶ 21, 36; Defs. 56.1 ¶¶ 21, 36; Conway Decl. Ex. 11); *SEC v. Lybrand,* 200 F.Supp.2d 384, 392 (S.D.N.Y.2002) (*"Lybrand II "*).

■ Vincent Verdiramo has not met his burden to show that these unregistered sales were exempt from registration. He contends unpersuasively that (a) his sales of RECOV shares were exempt from registration under the Rule 144(k) safe harbor because his shares were "derived from" a promissory note issued on April 1, 2000 by RECOV to Maureen Hogan ("Hogan") and that "the shares issued by [the Transfer Agent to Vincent Verdiramo in 2005] were deemed to have been issued when the [promissory] note was issued [to Hogan] in April 2000"; (b) he relied in good faith on the Rothstein Opinion, which states that "the proposed issuance by [RECOV] to [Vincent Verdiramo] ... **appears** to meet the requirements of Rule 144 for tacking the holding period of [Hogan's] note[ ] onto the holding period of equity stock to be received by [Vincent Verdiramo]"; and (c) Section 4(1) of the Securities Act also exempts Vincent Verdiramo's sales from registration because Vincent Verdiramo is a "person other than an issuer, underwriter, or dealer." (Defs. Mem. at 11, 14–16 (emphasis added); Vincent Verdiramo Decl. ¶ 9.) [8]

Under Rule 144(k), "if a person is not now and has not been an affiliate of the issuer within the last three months, and at least two years have elapsed since the securities to be sold were last acquired from an issuer or affiliate of the issuer, then that person need not comply with the other Rule 144 requirements." *Kern II,* 425 F.3d at 148 (citing 17 C.F.R.

---

**8.** The parties do not fully explain who Hogan is, other than to state that she was the holder of a promissory note, dated April 1, 2000, issued by RECOV. (Decl. of Richard Verdiramo, dated Apr. 11, 2011 ("Richard Verdiramo Decl."), ¶ 6; SEC Reply at 4.)

§ 230.144(k)). The seller may, in limited circumstances such as the "conversion" scenario provided for in Rule 144(d)(3)(ii) ("If the securities sold were acquired from the issuer for a consideration consisting solely of other securities of the same issuer surrendered for conversion ...."), satisfy the "two-year holding period by adding—'tacking'—the holding period of the prior non-affiliate holder to their own holding period" *SEC v. M & A West, Inc.,* 538 F.3d 1043, 1049 (9th Cir.2008) (citing 17 C.F.R. § 230.144(k)); *see also SEC v. Cavanagh,* 1 F.Supp.2d 337, 372 (S.D.N.Y.1998) (*"Cavanagh I"*); 17 C.F.R. § 230.144(d)(3)(ii).

Vincent Verdiramo did not satisfy Rule 144(k)'s two-year holding requirement because he acquired 109,000 RECOV shares in April 2005 and sold them between July 15, 2005 and February 6, 2006. *See supra* ¶¶ xi, xviii; (*see* SEC 56.1 ¶¶ 15, 36; Defs. 56.1 ¶¶ 15, 36); *Kern II,* 425 F.3d at 148–49 ("[Rule 144(k)] mandates ... a two-year holding period between the time the securities were acquired from the issuer or an affiliate of the issuer and the time they are resold."). And, Vincent Verdiramo was not able to "tack" onto Hogan's prior holding period pursuant to Rule 144(k)

because the shares Vincent Verdiramo sold in 2005 were obtained from RECOV, not from Hogan. *See supra* ¶¶ viii, xi; (*see* SEC 56.1 ¶¶ 12–13, 15; Defs. 56.1 ¶¶ 12–13, 15); *Kern II,* 425 F.3d at 151; *Phlo Corp. v. Stevens,* 62 Fed.Appx. 377, 382–83 (2d Cir.2003); *see also Lybrand II,* 200 F.Supp.2d at 396; *M & A West, Inc.,* 538 F.3d at 1049.

There is no basis—in law or common sense—for concluding that the 109,000 shares may "be deemed" to have been issued to Hogan at the time the promissory note was issued to her in April 2000, pursuant to Rule 144(d)(3)(ii). These shares were never issued to Hogan, who returned the promissory note to RECOV in 2005. (SEC Reply at 5.) RECOV's issuance of shares to Vincent Verdiramo on April 8, 2005 occurred pursuant to the April 7, 2005 Resolution. *See supra* ¶¶ viii, xi, xviii. Vincent Verdiramo's sales of those shares between July 15, 2005 and February 6, 2006, were transactions separate and apart from Hogan's receipt and later return of her promissory note to RECOV earlier in 2005.[9] *See supra* ¶¶ viii, xi, xviii; *SEC v. Universal Exp.,*

---

**9.** Defendants have provided no plausible arguments or evidence to support the conclusion that Hogan either received shares or converted her note into the 109,000 shares later sold in unregistered transactions by Vincent Verdiramo. As the SEC points out, "[t]he Verdiramos provide no board resolution specifically mentioning [any] conversion of the (unsigned) Hogan note" into Vincent Verdiramo's shares, and "Hogan testified under oath in her [December 2010] deposition that she never converted the note and was still owed the money." (SEC Reply at 7–8; *See* Vincent Verdiramo Decl. Ex. 5 at 1 (SEC: "Did you ever transfer this loan to anyone?" HOGAN: "No." SEC: "Did you ever transfer the loan or assign the loan to anyone else?" HOGAN: "No." SEC: "Okay. Did you ever forgive the loan?" HOGAN: "No.").) On February 1, 2011, Hogan wrote an unsworn letter to the SEC stating that she then recalled

allowing Vincent Verdiramo to "do whatever he wanted with [her n]ote" to "help him" "pay off a lot of RECOV's debt," but that "no written record of the agreement was ever made." (Vincent Verdiramo Decl. ¶¶ 26–27 & Ex. 5 at 2; *see* SEC Reply at 7 ("[T]he Hogan note story smacks of a complete fabrication and is supported by no admissible (or believable) facts.").)

Were the Court to credit Hogan's (unsworn, untimely, and farfetched) claim, such evidence would only help to (further) establish Vincent Verdiramo's influence over the management and policies of RECOV, and thus his status as a RECOV "affiliate," which would independently preclude him from safe harbor protection under Rule 144(k). *See infra* pages 270–71; *see Kern II,* 425 F.3d at 150; *M & A West, Inc.,* 538 F.3d at 1051; 17 C.F.R. § 230.144(k).

*Inc.*, 475 F.Supp.2d 412, 422 (S.D.N.Y. 2007) ("Registration of a security is transaction-specific, in that the requirement of registration applies to each act of offering or sale."); *Campbell v. Liberty Transfer Co.*, No. 02 Civ. 3084, 2006 WL 3751529, at *14 (E.D.N.Y. Dec. 19, 2006) ("[T]acking" is available only when "the [newly acquired] securities do not create a change in the holder's capital at risk" (citing Marc I. Steinberg & Joseph P. Kempler, *The Application and Effectiveness of SEC Rule 144*, 49 Ohio St. L.J. 473, 485 (1988))); *Cavanagh II*, 2004 WL 1594818, at *16 ("Each sale of a security … must either be pursuant to a registration statement or fall under a registration exemption."). The evidence presented establishes that these 109,000 shares were newly issued to Vincent Verdiramo, based upon the April 7, 2005 Resolution, and without any involvement by or reference to Hogan. *See supra* ¶¶ viii, xi, xviii.

Assuming, *arguendo*, that Vincent Verdiramo could somehow satisfy Rule 144(k)'s holding period (which he clearly cannot do), nowhere in his submissions does Vincent Verdiramo contend that he was not an affiliate of RECOV at the time of his unregistered sales in 2005. As the SEC persuasively contends, Vincent Verdiramo was clearly an affiliate of RECOV at the time of his sales of RECOV shares and he cannot rely on the Rule 144(k) safe harbor. (*See* SEC Reply at 4–8; Vincent Verdiramo Decl. ¶¶ 12–14, 18; Richard Verdiramo Decl. ¶¶ 27–28, 38; Conway Decl. Ex. 21R); *see also* 17 C.F.R. § 230.144(k) (only a seller "who is not an affiliate of the issuer at the time of his sale and has not been an affiliate during the preceding three months" is exempt from Section 5 registration). Vincent Verdiramo was "a person that directly, or indirectly through one or more intermediaries, control[led] … [an] issuer," 17 C.F.R. § 230.144(a)(1), by virtue of his active participation in and influence over the management and policies of RECOV at the time of (and during the three months preceding) his unregistered sales, as evidenced by: (i) Vincent Verdiramo's "central role in the plans to effect a [sale]" of a controlling interest in RECOV to Meyer on February 8, 2005; (ii) Vincent Verdiramo's holding, as of March 31, 2005, of $255,953 of RECOV's debt, which constituted 64% of RECOV's total outstanding notes and 42% of its total outstanding liabilities; (iii) RECOV and Verdiramo & Verdiramo P.A.'s "share[d] [use of] office space," and Verdiramo & Verdiramo PC's "agree[ment] not to charge [RECOV] rent … for [such] … use"; (iv) Vincent Verdiramo's repayment, between 1999 and 2005, of $140,000 of RECOV's corporate debt out of his own assets; (v) the letter, dated April 7, 2005, written by Vincent Verdiramo, "as counsel to RECOV," to the Transfer Agent, opining that "[t]he [6.1 million] shares issued to Richard Verdiramo" "are allowable"; (vi) the attorney-client relationship between Vincent Verdiramo and his son Richard Verdiramo, who was Chairman, CEO, President, and CFO of RECOV, and who, as of March 31, 2005, owned 1 million shares, or 7.48%, of RECOV common stock; and (vii) Vincent Verdiramo's wife's ownership of approximately 3.4 million shares of RECOV stock as of March 31, 2005, which made her the largest single holder of RECOV shares, *see supra* ¶¶ ii-vii, x; (*see* SEC 56.1 ¶¶ 8, 12–13; Defs. 56.1 ¶¶ 8, 12–13; Defs. Mem. at 10; Richard Verdiramo Decl. ¶¶ 27–28, 38–39; Vincent Verdiramo Decl. ¶¶ 12–14, 18; Conway Decl. Exs. 20R, 21R); *United States v. Corr*, 543 F.2d 1042, 1050 (2d Cir.1976) (whether someone is an affiliate "depends upon the totality of the circumstances including an appraisal of the influence upon management and policies of [the company] by the person involved").[10]

Notwithstanding Vincent Verdiramo's claim that he relied on the Rothstein Opinion, reliance on "the advice of counsel ... provides no protection against a violation of a strict liability statute like Section 5." *SEC v. Cavanagh*, No. 98 Civ. 1818, 2004 WL 1594818, at *16 (S.D.N.Y. July 16, 2004) ("*Cavanagh II*"); *Softpoint*, 958 F.Supp. at 859–60 ("Scienter is not an element of a Section 5 violation.") (citing *SEC v. Universal Major Indus. Corp.*, 546 F.2d 1044, 1046–47 (2d Cir.1976)); *see SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082 (2d Cir.1972) (rejecting defendants' claim of good-faith reliance on counsel as a defense to liability for violating the securities laws).

Finally, Vincent Verdiramo's sales of RECOV shares could not have been exempt from registration under Section 4(1) of the Securities Act because his affiliate status, *see supra* pages 270–71, "precludes any eligibility for th[at] exemption," *Platforms Wireless*, 617 F.3d at 1090 (citation omitted); *see also Cavanagh III*, 445 F.3d at 111 n. 12, (Defs. Mem. at 14.) [11]

### Richard Verdiramo

■ Richard Verdiramo argues that the SEC has not shown a prima facie violation of Section 5 because he "never sold a single share of RECOV or IMNI during the period relevant to this action." (Richard Verdiramo Decl. ¶ 49.) The SEC replies persuasively that Richard Verdiramo "is liable not because he himself sold [any shares], but because he was a necessary and substantial participant in the unregistered sales of shares by Chen, Edward Meyer, and V[incent] Verdiramo." (SEC Reply at 9); *see supra* ¶¶ viii, xi, xvii-xix.

Richard Verdiramo violated Section 5 because he was a necessary and substantial participant in the unregistered sales of RECOV shares by Chen, Meyer, and his father, Vincent Verdiramo. *See supra* ¶¶ viii, xi, xvii-xix; (*see* SEC 56.1 ¶¶ 12–13, 18–19, 32–33, 36; Defs. 56.1 ¶¶ 12–13, 18–19, 36); *see SEC v. Czarnik*, No. 10 Civ. 745, 2010 WL 4860678, at *11 (S.D.N.Y. Nov. 29, 2010) ("Liability for violations of Section 5 ... can extend ... to all necessary participants in the sale of unregistered stock."); *see also SEC v. Chinese Consol. Benev. Ass'n, Inc.*, 120 F.2d 738, 741 (2d Cir.1941). The evidence presented, including the April 7, 2005 Resolution signed by Richard Verdiramo, *see supra* ¶ viii, demonstrates that Richard Verdiramo personally authorized and directed the issuance of the RECOV shares to Vincent Verdiramo, Meyer, and Chen that were later sold in unregistered transactions, *see supra* ¶¶ viii, xi, xvii-xix;

---

**10.** There can be no doubt that Vincent Verdiramo, who also founded RECOV in 1994 and served as its Chairman, Chief Executive Officer, and President until March 1, 2000, "was not acting merely as [RECOV's] attorney, but was an active participant in and major influence on the 'management and policies' of [RECOV]" based, in part, upon "his relationship to the [CEO, his son, and to the largest shareholder, his wife,] of the company and ... his central role in the plans to effect a merger." *United States v. Sprecher*, 783 F.Supp. 133, 159 (S.D.N.Y.1992); *see Kern II*, 425 F.3d at 150; *M & A West, Inc.*, 538 F.3d at 1051; *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1089 (9th Cir.2010); *Lybrand*

*II*, 200 F.Supp.2d at 395; *SEC v. Spongetech Delivery Sys.*, No. 10 Civ. 2031, 2011 WL 887940, at *17 (E.D.N.Y. Mar. 14, 2011); *SEC v. 800america.com, Inc.*, No. 02 Civ. 9046, 2006 WL 3422670, at *7 (S.D.N.Y. Nov. 28, 2006); *see supra* ¶¶ ii-vii, x.

**11.** As noted, Vincent Verdiramo does not (and cannot) contend that he was not an "affiliate" of RECOV at the time of his unregistered sales. He does not (and cannot) meet his burden under either the Rule 144(k) or the Section 4(1) exemption from registration. *See Cavanagh III*, 445 F.3d at 111 n. 12; *Sprecher*, 783 F.Supp. at 159.

(*see* SEC 56.1 ¶¶ 12–19, 20, 24, 32, 36; Defs. 56.1 ¶¶ 12–20, 24, 36; Conway Decl. Exs. 7R–10R); *see also Universal Exp., Inc.*, 475 F.Supp.2d at 424 ("[D]efendants do not dispute that the securities they issued were then sold into the market. There is no doubt that, without their actions, 'the [unregistered] sale transactions would not have taken place.'" (quoting *SEC v. Murphy*, 626 F.2d 633, 651–52 (9th Cir.1980))); *Softpoint*, 958 F.Supp. at 860 (where defendant "helped prepare the . . . [documents] that led to the issuance of [company] stock" which was later sold in unregistered transactions). Prior to the issuance of the RECOV shares, Richard Verdiramo also retained Rothstein to write an opinion letter to the Transfer Agent stating that the shares were exempt from Section 5's registration requirements. *See supra* ¶ ix; (Richard Verdiramo Decl. ¶ 42.) The Transfer Agent relied and acted upon the Rothstein Opinion and upon the April 7, 2005 Resolution (which was also signed by Richard Verdiramo, *see supra* ¶ viii) to issue the free trading RECOV shares to Vincent Verdiramo, Meyer, and Chen, among others. (*See* Dep. Tr. of Transfer Agent Howard Manger, dated Dec. 7, 2006, at 21:20–21 ("Q: This would be the letter [from Rothstein that] you would rely on to issue the [RECOV] shares free trading? A: Yes."); 31:10–14 ("Q: To your recollection, did you ask [RECOV] for any additional proof that these people who were supposed to receive shares[, *i.e.*, Vincent Verdiramo, Meyer, and Chen] were either non-affiliates or had held their notes for two years? A: I relied on

[RECOV's April 7, 2005] Resolution."); *see Spongetech*, 2011 WL 887940, at *18 (where defendant was a "necessary participant and substantial factor in making the unregistered offerings"). "[B]ut for [Richard Verdiramo's] participation, the sale transactions [by Vincent Verdiramo, Meyer, and Chen] would not have taken place." *Universal Exp.*, 475 F.Supp.2d at 424; *see SEC v. Ramoil Mgmt., Ltd.*, No. 01 Civ. 9057, 2007 WL 3146943, at *10–11 (S.D.N.Y. Oct. 25, 2007); *see also Cavanagh I*, 1 F.Supp.2d at 372.

**Chen**

■ The SEC clearly has established a prima facie violation of Section 5 by Chen. *See Empire*, 2008 WL 2276629, at *7. No registration statement was filed or on file in 2005 for Chen's sales of RECOV stock. *See supra* ¶ xix; (*see* SEC 56.1 ¶ 21.) Chen sold 158,333 RECOV shares between July 20, 2005 and September 13, 2005. *See supra* ¶ xvii; (*see* SEC 56.1 ¶ 32.) And such sales were conducted by interstate means through Chen's brokerage account. *See supra* ¶ xvii; (*see* SEC 56.1 ¶ 32); *see also Cavanagh II*, 2004 WL 1594818, at *16.

Because Chen has not asserted, much less presented evidence, that any registration exception applied to her unregistered sale of shares, the SEC's request for summary judgment as to Chen is granted.[12] *See SEC v. Rabinovich & Assoc., LP*, No. 07 Civ. 10547, 2008 WL 4937360, at *4 (S.D.N.Y. Nov. 18, 2008); *see also SEC v. Franklin*, 175 Fed.Appx. 467 (2d Cir.2006); *SEC v. Opulentica, LLC*, 479 F.Supp.2d

12. Because Richard Verdiramo was also a necessary and substantial participant in Chen's (and Meyer's) unregistered sales of securities, *see supra* pages 271–72, and because neither Chen nor Meyer has attempted to establish an exemption from registration, *see supra* note 1 & page 272, the Court would also be able to conclude, based only upon Chen's (and Meyer's) sales and even without analyzing Vincent Verdiramo's sales of RECOV shares, that Richard Verdiramo violated Section 5. *See, e.g., Cavanagh I*, 1 F.Supp.2d at 372 ("[Section 5] liability extends beyond those who sell stock to all necessary participants in a sale of unregistered stock.").

319, 326 (S.D.N.Y.2007); *SEC v. Tee to Green Golf Parks, Inc.*, No. 00 Civ. 478S, 2011 WL 147862, at *8 (W.D.N.Y. Jan. 18, 2011).

**Sections 13(d) & 16(a) Claims Against Richard Verdiramo**

The SEC argues, among other things, that Richard Verdiramo violated Section 13(d) of the Exchange Act because he failed timely to file a Schedule 13D amendment when he acquired 6.1 million shares of RECOV; and that he violated Section 16(a) of the Exchange Act by "failing to timely file a Form 4 [and Form 5] reporting [t]his change in beneficial ownership of RECOV shares." *See supra* ¶ xiii; (SEC Mem. at 8–9.) Richard Verdiramo contends that "the 6.1 million shares were [only] issued [to him] pending the consummation of [a] proposed merger" between RECOV and CRC and, as a result, "there were no changes in [his] beneficial ownership of RECOV." (Defs. Mem. at 17–18.)

■ "Section 13(d)(1) and Rule 13d–1(a) require a stock purchaser acquiring beneficial ownership of 5% or more of a company's securities to disclose his ownership to the SEC by filing a Schedule 13D . . . ." *SEC v. Wyly*, 788 F.Supp.2d 92, 97–98 (S.D.N.Y.2011) (citing 15 U.S.C. § 78m(d)(1)(D), 17 C.F.R. § 240.13d–1(a)); *Rorer Grp. Inc. v. Oppenheimer & Co., Inc.*, No 82 Civ. 7906, 1983 WL 1330 (S.D.N.Y. June 27, 1983); *U.S. v. Bilzerian*, 926 F.2d 1285, 1298 (2d Cir.1991); *SEC v. Sierra Brokerage Servs., Inc.*, 608 F.Supp.2d 923, 954 (S.D.Ohio 2009).[13] Section 13(d)(2) sets forth a "continuing obligation on the person filing [the Schedule 13D] to amend his statements '[i]f any material change' occurs," *SEC v. Drexel Burnham Lambert, Inc.*, 837 F.Supp. 587,

608 (S.D.N.Y.1993), *e.g.*, when the person who was required to file the statement "acqui[res] . . . [additional] securities in an amount equal to one percent or more of [such] securities," 17 C.F.R. § 240.13d–2(a); *see SEC v. Amster & Co.*, 762 F.Supp. 604, 610 (S.D.N.Y.1991).

Section 16(a) and Rule 16a–3 require every person "who is a director or an officer of the issuer of securit[ies]" to file a Form 4 with the SEC reporting any "changes in beneficial ownership," *see Sierra*, 608 F.Supp.2d at 954 (citing 15 U.S.C. § 78p(a); 17 C.F.R. § 240.16a–3), and also to "file an annual statement [reporting such changes] on [a] Form 5," *SEC v. Shattuck Denn Mining Corp.*, 297 F.Supp. 470, 471 (S.D.N.Y.1968) (citing 17 C.F.R. § 240.16a–3); *SEC v. Teo*, No. 04 Civ. 1815, 2010 WL 3184349, at *9 (D.N.J. Aug. 10, 2010).

■ Summary judgment is granted in favor of the SEC on its Sections 13(d) and 16(a) claims against Richard Verdiramo, who owned more than 5% of RECOV stock, *see supra* ¶ vii, and was Chairman, CEO, President, and CFO of RECOV, *see supra* ¶ vi, failed to file a Schedule 13D amendment reporting his acquisition of over 70% of outstanding RECOV shares, and failed also to file Forms 4 and 5 reporting such change in beneficial ownership, *see supra* ¶¶ xii, xiii; *see SEC v. Solucorp Indus., Ltd.*, 274 F.Supp.2d 379, 420 (S.D.N.Y.2003); *SEC v. Sands*, 902 F.Supp. 1149, 1164–65 (C.D.Cal.1995); *SEC v. Olins*, No. C–07–6423, 2010 WL 900518, at *1–2 (N.D.Cal. Mar. 12, 2010). Prior to April 7, 2005, Richard Verdiramo owned 1 million shares in RECOV, which exceeded 5% of outstanding RECOV com-

---

**13.** "A person beneficially owns a security if such person directly or indirectly . . . has (i) voting power, which includes the power to vote, or to direct the voting of, such security; and/or (ii) investment power, which includes the power to dispose, or to direct the disposition of, such security." *Wyly*, 788 F.Supp.2d at 97.

mon stock. *See supra* ¶ vii; (*see* SEC 56.1 ¶ 26; Defs. 56.1 ¶ 26.) He acquired over 1% (in fact, over 70%) of additional RE-COV shares on April 8, 2005 when 6.1 million additional shares were issued by RECOV and transferred to him. *See supra* ¶¶ viii, xii; (*see* SEC 56.1 ¶¶ 14, 27–28; Defs. 56.1 ¶¶ 14, 27–28); *see also Sands,* 902 F.Supp. at 1165. At the time the 6.1 million shares were transferred to him, Richard Verdiramo was RECOV's Chairman, CEO, President, and CFO. *See supra* ¶ vi. And, after Richard Verdiramo acquired those 6.1 million RECOV shares, he failed to file a Schedule 13D amendment; he also failed to file the required statement of change in beneficial ownership (Form 4); and he also failed to file the annual statement (Form 5). *See supra* ¶ xiii; (*see* SEC 56.1 ¶¶ 26–28, 30–31; Defs. 56.1 ¶¶ 26–28, 30–31; Conway Decl. Exs. 11–12, 22–23); *see also Sands,* 902 F.Supp. at 1165 ("The increase in ownership by an amount greater than one percent constituted a 'material' acquisition and required [defendant] to file with the SEC an amendment to the Schedule 13D."); *Teo,* 2010 WL 3184349, at *10; *SEC v. Drexel Burnham Lambert Inc.,* 837 F.Supp. 587, 609 (S.D.N.Y.1993); *SEC v. Save the World Air Inc.,* No. 01 Civ. 11586, 2005 WL 3077514, at *14 (S.D.N.Y. Nov. 15, 2005).

Richard Verdiramo's assertion that he was not required to report his acquisition of the 6.1 million RECOV shares because "[t]hose shares were issued solely to enable control of RECOV to pass if [a] merger took place" (Defs. Mem. at 18) is unpersuasive because, among other reasons, he provides no evidence in support, *see Cav-*

anagh *II,* 2004 WL 1594818, at *12 ("[C]onclusory statements are insufficient to defeat a motion for summary judgment." (citing *Opals on Ice Lingerie v. Bodylines,* 320 F.3d 362, 370 n. 3 (2d Cir. 2003))).[14] In fact, the record reflects that the Transfer Agent issued the 6.1 million shares of restricted common stock to Richard Verdiramo for services rendered as RECOV's President—and not for any other purpose, *see supra* ¶ viii; (*see* SEC 56.1 ¶ 13; Defs. 56.1 ¶ 13). There is no mention in the April 7, 2005 Resolution of any prospective merger. *See Tee to Green,* 2011 WL 147862, at *4 ("A nonmoving party must do more than cast a 'metaphysical' doubt as to the material facts; [he] must 'offer some hard evidence showing that its version of the events is not wholly fanciful.'" (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986))).

**Injunctive Relief**

The SEC argues that an injunction against all Defendants is warranted because their "conduct was not isolated," they "have provided no assurances against future violations," and they "have [not] acknowledged their wrongful conduct." (SEC Mem. at 10.) The SEC states that Vincent Verdiramo should be permanently enjoined from future violations of Section 5 because he "sold 109,000 [RECOV] shares in ... illegal transactions," his "conduct was repeated and went [on] over a long time," "[his] conduct was knowing, or at least reckless, since [he] is a lawyer who deals in securities matters," and he is "in [a] professional position[ ] to repeat the

**14.** Nor does Richard Verdiramo provide the Court with legal authority for the proposition that acquiring and holding shares for a future (contemplated) merger is exempt from Sections 13(d) and 16(a). And, neither Section 13(d) nor Section 16(a) "require[s] a showing of scienter to establish liability." *Telenor*

*East Invest AS v. Altimo Holdings & Investments Ltd.,* 567 F.Supp.2d 432, 442 (S.D.N.Y. 2008); *see also SEC v. McNulty,* No. 94 Civ. 7114, 1996 WL 422259, at *7 (S.D.N.Y. July 29, 1996); *Sierra Brokerage Servs., Inc.,* 608 F.Supp.2d at 957 n. 32; *SEC v. Levy,* 706 F.Supp. 61, 69 (D.D.C.1989).

[same] conduct." (SEC Reply at 11.) The SEC states that Richard Verdiramo should be permanently enjoined from future violations of Sections 5, 13(d), and 16(a) because he "issued the resolutions transferring the stock [that] result[ed] in the unregistered sales of over 700,000 [RECOV] shares," and his conduct "was knowing, or at least reckless." (SEC Reply at 11.) [15]

Vincent and Richard Verdiramo unpersuasively counter that there are no grounds for an injunction because the SEC cannot establish "a single violation," Vincent and Richard Verdiramo "ha[ve] never previously [or subsequently] been sued by the SEC," and "the events at issue took place years ago." (Defs. Opp'n at 19.)

 "Injunctive relief is expressly authorized by Congress to proscribe future violations of federal securities laws." *Cavanagh I*, 155 F.3d at 135; *see also* 15 U.S.C. § 78u(d). "In order to obtain a permanent injunction, the SEC must show that there is a 'substantial likelihood of future violations of illegal securities conduct.'" *Cavanagh II*, 2004 WL 1594818, at *28 (citing *Cavanagh I*, 155 F.3d at 135). In making this determination, a court should look to

(i) the fact that the defendant has been found liable for illegal conduct; (ii) the degree of scienter involved; (iii) whether the infraction is an "isolated occurrence"; (iv) whether [the] defendant continues to maintain that his past conduct was blameless; and (v) whether, because of his professional occupation, the defendant might be in a position where future violations could be anticipated.

*Id.* (citation omitted); *see also SEC v. McNulty*, 137 F.3d 732, 741 (2d Cir.1998); *SEC v. Mgmt. Dynamics Inc.*, 515 F.2d 801, 807 (2d Cir.1975).

### Vincent Verdiramo

 The SEC is entitled to injunctive relief against Vincent Verdiramo preventing him from committing future violations of Sections 5. *See SEC v. Platinum Inv. Corp.*, No. 02 Civ. 6093, 2006 WL 2707319, at *4 (S.D.N.Y. Sept. 20, 2006). Vincent Verdiramo has been found above to have violated Section 5 of the Securities Act by selling 109,000 RECOV shares in nineteen unregistered transactions between July 15, 2005 and February 6, 2006. *See supra* ¶ xviii, pages 14–20. As an attorney dealing in securities matters, and as the former Chairman, Chief Executive Officer, and President of RECOV, Vincent Verdiramo's unregistered sales of RECOV shares in violation of Section 5 was, at the very least, reckless. *See supra* ¶¶ ii, x; (*See* SEC 56.1 ¶ 8; Defs. 56.1 ¶ 8; Defs. Mem. at 6); *see also Cavanagh II*, 2004 WL 1594818, at *29 ("[Defendants] knew or should have known that a registration statement was required for the sale of stock. . . . [D]efendants were sophisticated businessmen with extensive securities industry experience."); *SEC v. Cooper*, 402 F.Supp. 516, 525 (S.D.N.Y.1975). Vincent Verdiramo's multiple sales over a seven-month period were not isolated and "indicate a likelihood of future violations." *See supra* ¶ xviii; (*see* SEC 56.1 ¶ 36; Defs. 56.1 ¶ 36); *SEC v. Shapiro*, 494 F.2d 1301, 1308 (2d Cir.1974) ("First offenders are not immune from injunctive relief," particularly where such offender "made not one but seven [unlawful transactions which

---

**15.** The SEC argues that Chen should also be permanently enjoined from future violations of Section 5 because she "made repeated unregistered sales totaling 158,333 shares of [RECOV] securities to the unsuspecting general public"; "has shown no remorse," as evidenced by her "refus[al]" to sit for her deposition" and by her failure to respond to this motion; and is reasonably likely to "repeat[]" her "illegal conduct." (SEC Reply at 11.)

were the basis for the SEC action] in the space of six weeks."); *see also Softpoint*, 958 F.Supp. at 866. Vincent Verdiramo maintains in the face of compelling evidence to the contrary that his conduct was legal (*see* Defs. Mem. at 1 ("Richard and Vincent [Verdiramo] did *not* engage in the unlawful offer and sale of the securities of RECOV . . . ." (emphasis in original))), and he has provided no assurances against future violations (*see* Defs. Mem. at 14–16); *see also Cavanagh II*, 2004 WL 1594818, at *29; *Platinum*, 2006 WL 2707319, at *4; *SEC v. Lorin*, 76 F.3d 458, 461 (2d Cir. 1996) ("[T]he court may properly view a culpable defendant's continued protestations of innocence as an indication that injunctive relief is advisable."). His reliance on the Rothstein Opinion (*see* Defs. Mem. 10–12, 16) also "illustrates [his] efforts to shift blame and responsibility for [his] illegal actions." *Cavanagh II*, 2004 WL 1594818, at *29; (*see* Defs. Mem. at 11.) And, as an attorney practicing in the area of securities regulation, *see supra* ¶¶ ii, x; (*see* Conway Decl. Ex. 20R), Vincent Verdiramo is engaged in an occupation which presents future opportunities for violations of the securities laws. *See supra* ¶¶ ii, x; *see also Cavanagh II*, 2004 WL 1594818, at *29; *see also SEC v. Grossman*, 887 F.Supp. 649, 660 (S.D.N.Y. 1995) ("[T]he possibility that [the defendant] may continue to practice law in the future raises the specter of further misconduct.").

### Richard Verdiramo

■ The SEC is entitled to injunctive relief against Richard Verdiramo preventing him from committing future violations of Sections 5, 13(d), and 16(a). *See SEC v. Tecumseh Holdings Corp.*, No. 03 Civ. 5490, 2009 WL 4975263, at *5–6 (S.D.N.Y. Dec. 22, 2009). Richard Verdiramo has been found above to have violated Section 5 of the Securities Act and Sections 13(d) and 16(a) of the Exchange Act. *See supra* pages 271–72. As the Chairman, CEO, President, and CFO of RECOV from 2000 to 2006, *see supra* ¶ vi, Richard Verdiramo's authorization of the issuance of shares to individuals, including his father, who soon thereafter sold such shares in unregistered transactions was, at the very least, reckless, *see supra* ¶¶ viii, xi, xvii; *see Cavanagh II*, 2004 WL 1594818, at *29; *SEC v. Aqua–Sonic Prod. Corp.*, 524 F.Supp. 866, 879 (S.D.N.Y.1981) (citing *Oleck v. Fischer*, 623 F.2d 791, 794 (2d Cir.1980)). Also, reckless was Richard Verdiramo's failure to report to the SEC his own personally authorized acquisition of over 70% of RECOV's outstanding shares in April 2005. *See supra* ¶¶ xii, xiii. These failures to comply with federal securities law were not isolated events. *See supra* ¶¶ viii, xi, xiv-xv; *see Shapiro*, 494 F.2d at 1308. With respect to his Section 5 violations, Richard Verdiramo personally signed, over the course of four months, four separate Board resolutions authorizing the issuance of shares to various individuals, including Vincent Verdiramo, Richard Verdiramo, Chen, and Meyer. *See supra* ¶¶ viii, xi, xiv-xv; (*see* SEC 56.1 ¶¶ 12–13, 16–18; Defs. 56.1 ¶¶ 12–13, 16–18); *Shapiro*, 494 F.2d at 1308. Richard Verdiramo continues to maintain that his conduct was legal and has provided no assurances against future violations. (*See* Defs. Mem. at 1, 14–18); *see also Cavanagh II*, 2004 WL 1594818, at *29; *Platinum*, 2006 WL 2707319, at *4. And, Richard Verdiramo, who is now CEO and President of Public Entity Acquisition Corporation, a New Jersey corporation, "is responsible for and certifies . . . company filings" (SEC Reply at 11), and clearly engaged in an occupation which presents future opportunities for violations of the securities laws. *See supra* ¶ vi; (*see* SEC 56.1 ¶ 1; Defs. 56.1 ¶ 1); *see also Cav-*

*anagh II,* 2004 WL 1594818, at *29; *see also Softpoint,* 958 F.Supp. at 867; *SEC v. United States Envtl., Inc.,* No. 94 Civ. 6608, 2003 WL 21697891, at *32 (S.D.N.Y. July 21, 2003); *see also SEC v. Am. Bd. of Trade, Inc.,* 750 F.Supp. 100, 101 (S.D.N.Y.1990).

### Chen

 The SEC is also entitled to injunctive relief against Chen preventing her from committing future violations of Section 5. *See SEC v. World Info. Tech., Inc.,* 590 F.Supp.2d 574, 577 (S.D.N.Y.2008). Chen violated Section 5 of the Securities Act when she sold her RECOV shares in unregistered transactions on fifteen separate occasions between July 20, 2005 and September 13, 2005. *See supra* page 272, ¶¶ xvii; *(see* SEC 56.1 ¶ 32); *Shapiro,* 494 F.2d at 1308; *Softpoint,* 958 F.Supp. at 866. Chen failed to appear for her deposition in this matter and/or to file an opposition to the SEC's motion for partial summary judgment. She has also failed to acknowledge her wrongdoing and/or to provide assurances against further violations. *See SEC v. Pierre,* No. 02 Civ. 253, 2003 WL 21488014, at *5 (S.D.N.Y. June 27, 2003); *SEC v. China Energy Sav. Tech., Inc.,* No. 06 Civ. 6402, 2008 WL 6572372, at *8 (E.D.N.Y. Mar. 28, 2008); *see also SEC v. One or More Unknown Traders in Common Stock of Certain Issuers,* No. 08 Civ. 1402, 2009 WL 3233110, at *5 (E.D.N.Y. Oct. 2, 2009). As Principal of Greenwood Capital, Inc., Chen is in a position to commit future violations of the securities laws. *(See* SEC 56.1 ¶ 11); *China Energy,* 2008 WL 6572372, at *8; *Pierre,* 2003 WL 21488014, at *5.

### Disgorgement

The SEC argues that Defendants' "ill-gotten gains" from "the[ir] sales of unregistered securities ... should be dis-gorged." (SEC Mem. at 11.) Vincent and Richard Verdiramo counter that there are "no grounds for disgorgement" because neither of them "has ever previously been sued by the SEC," "the events at issue took place years ago," and "[i]n all the years since the events at issue, the SEC has never pursued any other claim of violation regarding the Verdiramo[s'] business activities." (Defs. Opp'n at 19.)

 "As an exercise of its equity powers, a court may order defendants to disgorge their earnings from violations of the securities law." *SEC v. Fischbach Corp.,* 133 F.3d 170, 175 (2d Cir.1997). "The primary purpose of disgorgement as a remedy for violation of the securities law is to deprive violators of their ill-gotten gains, thereby effectuating the deterrence objectives of those laws." *SEC v. Credit Bancorp, Ltd.,* No. 99 Civ. 11395, 2011 WL 666158, at *1 (S.D.N.Y. Feb. 14, 2011) (citing *SEC v. Wang,* 944 F.2d 80, 85 (2d Cir.1991)). "[D]isgorgement need only be a reasonable approximation of profits causally connected to the violation." *SEC v. Warde,* 151 F.3d 42, 50 (2d Cir.1998). "When disgorgement is ordered in an SEC-initiated proceeding, the IRS underpayment rate is appropriate." *Cavanagh II,* 2004 WL 1594818, at *29.

 Vincent Verdiramo, Chen, and Richard Verdiramo are obligated to disgorge profits from the unregistered sale of shares (described above) because the "deterrent effect of an SEC enforcement would be greatly undermined if securities law violators were not required to disgorge illicit profits." *SEC v. Svoboda,* 409 F.Supp.2d 331, 344 (S.D.N.Y.2006) (quoting *SEC v. First Jersey Sec. Inc.,* 101 F.3d 1450, 1474 (2d Cir.1996)); *see SEC v. AbsoluteFuture.com,* 393 F.3d 94, 97 (2d Cir. 2004); *SEC v. Calvo,* 378 F.3d 1211, 1215 (11th Cir.2004); *Tecumseh Holdings,* 2009 WL 4975263, at *6.

278

The matter is referred to United States Magistrate Judge Andrew J. Peck for a determination of the appropriate amount of disgorgement.

## V. Conclusion and Order

For the reasons stated herein, the SEC's motion for partial summary judgment [# 45] is granted. This matter is referred to United States Magistrate Judge Andrew J. Peck for further proceedings as to the amounts to e disgorged.

The parties shall appear before the Court for a status/pretrial conference on Thursday, September 15, 2011 at 9:30 a.m. in Courtroom 21B of the United States Courthouse, 500 Pearl Street, New York, New York.