UNITED STATES SECURITIES and EXCHANGE COMMISSION, Plaintiff,

v.

Richard VERDIRAMO, Vincent L. Verdiramo, Edward Meyer, Jr., and Victoria Chen, Defendants.

No. 10 Civ. 1888(RMB)(AJP).

United States District Court, S.D. New York.

Jan. 13, 2012.

Beth Collier Groves, US Securities and Exchange Commission, Dean Michael Conway, Securities and Exchange Commission, Washington, DC, for Plaintiff.

Victoria Chen, Vancouver, BC, pro se.

## ORDER

RICHARD M. BERMAN, District Judge.

### I. Background

On November 10, 2011, United States Magistrate Judge Andrew J. Peck issued a Report and Recommendation ("Report"), following this Court's December Order dated September 9, 2011, recommending that this Court order "(1) Victoria Chen to disgorge $40,284 and pay $16,453 in prejudgment interest; (2) Vincent Verdiramo to disgorge $42,938 and pay $15,827 in prejudgment interest; and (3) Richard Verdiramo to be jointly and severally liable with Chen, Meyer and Vincent Verdiramo for $307,769 in disgorgement and

$120,356 in prejudgment interest." (Report, dated November 10, 2011, at 2.) At a conference before this Court on December 19, 2011, the SEC, Richard Verdiramo, and Vincent Verdiramo advised the Court that they would not challenge the findings of Magistrate Judge Peck on the remedies related to the summary judgment motion. (Transcript of Proceedings, dated December 19, 2011, at 3.)

**For the reasons set forth below, the Court adopts the unopposed Report in its entirety.**

### II. Standard of Review

"The Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); Fed. R.Civ.P. 72(b). "To accept the report and recommendation of a magistrate, to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record." *Cobalt Multifamily Investors I, LLC v. Bridge Capital (USVI), LLC,* No. 06 Civ. 5738, 2007 WL 2584926, at *1, 2007 U.S. Dist. LEXIS 66349, at *2–3 (S.D.N.Y. 2007) (quoting *Nelson v. Smith,* 618 F.Supp. 1186, 1189 (S.D.N.Y.1985)).

### III. Analysis

The facts and procedural history set forth in the Report are incorporated herein by reference. Having conducted a review of, among other things, the Complaint, the Decision and Order, the Report, and applicable legal standards, the Court finds that the Report is not clearly erroneous or contrary to law as to any of Victoria Chen, Vincent Verdiramo, or Richard Verdiramo. *See Schlaifer Nance & Co. v. Estate of Warhol,* 119 F.3d 91 (2d Cir. 1997).

## IV.  Conclusion and Order

For the reasons stated herein and therein, the Report is adopted in its entirety.

Victoria Chen is ordered to disgorge $40,284 and to pay $16,453 in prejudgment interest, Vincent Verdiramo is ordered to disgorge $42,938 and to pay $15,827 in prejudgment interest, and Richard Verdiramo is jointly and severally liable with Chen, Meyer, and Vincent Verdiramo for $307,769 in disgorgement and $120,356 in prejudgment interest.  The SEC is directed to submit a proposed judgment in accordance with this Order.

## *REPORT AND RECOMMENDATION*

ANDREW J. PECK, United States Magistrate Judge.

### To the Honorable Richard M. Berman, United States District Judge:

On March 10, 2010, the Securities and Exchange Commission ("SEC") filed a complaint alleging, *inter alia*, that Richard Verdiramo, Vincent Verdiramo, Edward Meyer and Victoria Chen violated Section 5 of the Securities Act of 1933 ("Securities Act") through unregistered stock sales.[1] (Dkt. No. 1: Compl.)  On September 9, 2011, Judge Berman granted summary judgment in favor of the SEC, ordered defendants to disgorge their illegally obtained profits and referred this case to me for a determination of the appropriate amount of disgorgement.  *U.S. SEC v. Verdiramo*, 890 F.Supp.2d at 261–78, 2011 WL 4344310 at *1–15; *see also* Dkt. No. 96: Order of Reference.

For the reasons discussed below, the Court should order (1) Victoria Chen to disgorge $40,284 and pay $16,453 in prejudgment interest;  (2) Vincent Verdiramo to disgorge $42,938 and pay $15,827 in prejudgment interest;  and (3) Richard Verdiramo to be jointly and severally liable with Chen, Meyer and Vincent Verdiramo for $307,769 in disgorgement and $120,356 in prejudgment interest.

## *FACTS*

Although familiarity with the facts recited in Judge Berman's summary judgment decision is assumed, the following facts are relevant to the issue of disgorgement.

Vincent Verdiramo founded RECOV in March 1994, and served as its Chairman, C.E.O. and President until March 1, 2000.  *U.S. SEC v. Verdiramo*, 890 F.Supp.2d 263, 264, 10 Civ. 1888, 2011 WL 4344310 at *3 (S.D.N.Y. Sept. 9, 2011) (Berman, D.J.).  Since March 2000, Vincent's son Richard Verdiramo has served as RECOV's Chairman, C.E.O., C.F.O. and President.  *U.S. SEC v. Verdiramo*, 890 F.Supp.2d at 263, 2011 WL 4344310 at *3.

Pursuant to an April 7, 2005 RECOV board resolution signed by Richard Verdiramo (acting as RECOV's President), RECOV's transfer agent issued 333,334 shares of unrestricted common stock to Edward Meyer;[2] 333,333 shares to Greenwood Capital Holdings, Inc., a company controlled by Victoria Chen;  126,000 shares to Public Entity Acquisition Corp., a company controlled by Vincent and Rich-

---

1.  On April 7, 2011, Meyer and the SEC entered a settlement agreement permanently enjoining Meyer from violating Section 5 of the Securities Act and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and ordering Meyer to disgorge $62,050.  *U.S. SEC v. Verdiramo*, 890 F.Supp.2d 257, 261 n. 1, 10 Civ. 1888, 2011 WL 4344310 at *1 n. 1 (S.D.N.Y. Sept. 9, 2011) (Berman, D.J.).

2.  On July 22, 2005, Richard Verdiramo signed another RECOV board resolution authorizing RECOV's transfer agent to issue an additional 624,829 unrestricted shares to Meyer.  (Dkt. No. 47: SEC Rule 56.1 Stmt. ¶ 18; Dkt. No. 68: Verdiramo Rule 56.1 Stmt. ¶¶ 12, 18.)

ard Verdiramo; and 300,000 shares to Illuminate International Corp., a company controlled by Vincent Verdiramo. *U.S. SEC v. Verdiramo*, 890 F.Supp.2d at 263–65, 2011 WL 4344310 at *3–4.

Within months of obtaining the RECOV stock, Chen sold 158,333 shares for $40,284, Vincent Verdiramo sold 109,000 shares for $42,938 and Meyer sold approximately 500,000 shares for $224,547. *U.S. SEC v. Verdiramo*, 890 F.Supp.2d at 264, 267, 272, 2011 WL 4344310 at *4, *7, *11; Dkt. No. 49: Conway 12/23/10 Aff. Exs. 14R–19R: V. Verdiramo, Meyer & Chen Brokerage Records; Dkt. No. 74: SEC SJ Reply Br. at 2 nn. 2 & 4, 3 n.5. The defendants, however, failed to file registration statements with the SEC for their sales of RECOV stock. *U.S. SEC v. Verdiramo*, 890 F.Supp.2d at 265, 2011 WL 4344310 at *5. Consequently, Judge Berman found that Chen and Vincent Verdira-

mo violated Section 5 of the Securities Act,[3] which makes it "unlawful for any person to use the channels of interstate commerce[4] to sell a security unless a registration statement is in effect as to such security." *U.S. SEC v. Verdiramo*, 890 F.Supp.2d at 267–73, 2011 WL 4344310 at *7–11.[5] Judge Berman also ruled that "Richard Verdiramo violated Section 5 because he was a necessary and substantial participant in the unregistered sales of RECOV shares by Chen, Meyer, and his father, Vincent Verdiramo," noting that Richard Verdiramo "personally authorized and directed the issuance of the RECOV shares" to his co-defendants "that were later sold in unregistered transactions." *U.S. SEC v. Verdiramo*, 890 F.Supp.2d at 271, 273 n. 12, 2011 WL 4344310 at *10, *11 n. 12.

Judge Berman ordered that "Vincent Verdiramo, Chen, and Richard Verdiramo

---

**3.** Section 5 of the Securities Act provides:

(a) Sale or delivery after sale of unregistered securities Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly—

(1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or

(2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale.

. . .

(c) Necessity of filing registration statement It shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed as to such security

. . . .

15 U.S.C. § 77e(a)(1)-(2), (c). "[S]elling unregistered securities is a strict liability offense." *Cobalt Multifamily Investors I, LLC v. Arden*, 06 Civ. 6172, 2011 WL 4595196 at *3 (S.D.N.Y. Sept. 9, 2011), *report & rec. adopted*, 857 F.Supp.2d 349 (S.D.N.Y.2011); *see also, e.g., U.S. SEC v. Universal Express, Inc.*, 475 F.Supp.2d 412, 422 (S.D.N.Y.2007) (Lynch, D.J.) ("A plaintiff need not also show scienter to prove a Section 5 violation."), *aff'd*, 300 Fed.Appx. 70 (2d Cir.2008), *cert. denied*, —— U.S. ——, 129 S.Ct. 2745, 174 L.Ed.2d 248 (2009). While there are several exemptions to Section 5's registration provision, Judge Berman ruled that the exemptions did not apply in this case. *U.S. SEC v. Verdiramo*, 890 F.Supp.2d at 268–71, 2011 WL 4344310 at *8–10.

**4.** Judge Berman found that the Chen and Vincent Verdiramo stock sales were conducted using interstate means through their brokerage accounts. *U.S. SEC v. Verdiramo*, 890 F.Supp.2d at 267, 272, 2011 WL 4344310 at *7, *11.

**5.** As noted on page 370 n. 1 above, the SEC settled its case against Meyer on April 7, 2011.

are obligated to disgorge profits from the unregistered sale of shares ... because the 'deterrent effect of an SEC enforcement would be greatly undermined if securities law violators were not required to disgorge illicit profits.'" *U.S. SEC v. Verdiramo*, 890 F.Supp.2d at 277, 2011 WL 4344310 at *15.

## ANALYSIS

### A. Applicable Legal Standards

▮▮▮ "It is well-settled that disgorgement is an appropriate remedy for breach of federal securities laws." *Cobalt Multifamily Investors I, LLC v. Arden*, 06 Civ. 6172, 2011 WL 4595196 at *7 (S.D.N.Y. Sept. 9, 2011), *report & rec. adopted*, 857

F.Supp.2d 349 (S.D.N.Y.2011).[6] "The primary purpose of disgorgement as a remedy for violation of the securities laws is to deprive violators of their ill-gotten gains, thereby effectuating the deterrence objectives of those laws." *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1474 (2d Cir. 1996), *cert. denied*, 522 U.S. 812, 118 S.Ct. 57, 139 L.Ed.2d 21 (1997).[7] "The district court has broad discretion not only in determining whether or not to order disgorgement but also in calculating the amount to be disgorged." *SEC v. First Jersey Sec., Inc.*, 101 F.3d at 1474–75.[8] "[D]isgorgement need only be a reasonable approximation of profits causally connected to the violation.'" *SEC v. Patel*, 61 F.3d 137, 139 (2d Cir.1995).[9] "'After a

**6.** *Accord, e.g., SEC v. Boock*, 09 Civ. 8261, 2011 WL 3792819 at *24 (S.D.N.Y. Aug. 25, 2011) ("'[D]isgorgement is a well-established remedy in the Second Circuit, particularly in securities enforcement actions,' which derives from a court's power under Article III of the Constitution and Section 11 of the Judiciary Act." (quoting *SEC v. Cavanagh*, 445 F.3d 105, 116 (2d Cir.2006)); *SEC v. Lines*, 07 Civ. 11387, 2011 WL 3627695 at *2 (S.D.N.Y. Aug. 16, 2011) ("[W]hen a defendant is found liable for violations of a federal securities law, a court may grant disgorgement of any ill-gotten gains as an equitable remedy." (citing *Cavanagh*))).

**7.** *Accord, e.g., SEC v. Wang*, 944 F.2d 80, 85 (2d Cir.1991) ("The disgorgement remedy ... approved in this case is, by its very nature, an equitable remedy since it seeks to deprive the defendants of their ill-gotten gains to effectuate the deterrence objectives of the securities laws." (citation omitted)); *SEC v. Elliott*, 09 Civ. 7594, 2011 WL 3586454 at *11 (S.D.N.Y. Aug. 11, 2011); *SEC v. Credit Bancorp, Ltd.*, 99 Civ. 11395, 2011 WL 666158 at *1 (S.D.N.Y. Feb. 14, 2011); *SEC v. Shehyn*, 04 Civ. 2003, 2010 WL 3290977 at *7 (S.D.N.Y. Aug. 9, 2010) ("Disgorgement serves a deterrent purpose as a remedy for violations of the securities laws...."); *SEC v. Bear, Stearns & Co.*, 626 F.Supp.2d 402, 407 (S.D.N.Y.2009) ("Disgorgement 'is intended to deprive the violator of unjust enrichment, thereby furthering the deterrence objectives of the securities

laws.'"); *SEC v. One Wall Street, Inc.*, No. 06–cv–4217, 2008 WL 5082294 at *5 (E.D.N.Y. Nov. 26, 2008) ("It is well-established in the Second Circuit that 'the primary purpose of disgorgement is to deter future fraud by depriving violators of their ill-gotten gains.'").

**8.** *Accord, e.g., SEC v. Razmilovic*, 822 F.Supp.2d 234, 252–54 (E.D.N.Y.2011); *SEC v. Elliott*, 2011 WL 3586454 at *11; *SEC v. Smith*, 798 F.Supp.2d 412, 436–37 (N.D.N.Y. 2011); *SEC v. Neurotech Dev. Corp.*, No. CV 04–4667, 2011 WL 1113705 at *2 (E.D.N.Y. Feb. 28, 2011), *report & rec. adopted*, 2011 WL 1099864 (E.D.N.Y. Mar. 23, 2011).

**9.** *Accord, e.g., U.S. SEC v. Universal Express, Inc.*, 438 Fed.Appx. 23, 25–26 (2d Cir.2011) (For disgorgement purposes, "the SEC needed to provide only a reasonable approximation of the profits gained from the illegal activity."); *SEC v. Namer*, 183 Fed.Appx. 120, 121 (2d Cir.2006); *SEC v. Razmilovic*, 822 F.Supp.2d at 252–54; *SEC v. Boock*, 2011 WL 3792819 at *24; *SEC v. Anticevic*, 05 Civ. 6991, 2010 WL 3239421 at *5 (S.D.N.Y. Aug. 16, 2010) ("In meeting its burden for disgorgement, the '[p]laintiff is not required to trace every dollar of proceeds ... nor ... required to identify misappropriated monies which have been commingled ....'"); *U.S. SEC v. Universal Express, Inc.*, 646 F.Supp.2d 552, 563 (S.D.N.Y.2009) (Lynch, D.J.).

plaintiff makes a showing of the amount properly to be disgorged, the burden then shifts to the defendant who must clearly demonstrate that the amount claimed by the plaintiff is not a reasonable approximation.'" *SEC v. Neurotech Dev. Corp.*, 2011 WL 1113705 at *2.[10] "So long as the measure of disgorgement is reasonable, 'any risk of uncertainty should fall on the wrongdoer whose illegal conduct created the uncertainty.'" *SEC v. Warde*, 151 F.3d 42, 50 (2d Cir.1998).[11]

■ In formulating a disgorgement remedy, the court has discretion to impose "joint and several liability for combined profits on collaborating or closely related parties." *SEC v. AbsoluteFuture.com*, 393 F.3d 94, 97 (2d Cir.2004).[12] The total disgorgement, however, "cannot exceed the combined profits of the defendants." *SEC v. AbsoluteFuture.com*, 393 F.3d at 97.[13]

■ Additionally, a "court can award prejudgment interest on the amount ... awarded as disgorgement, in order to deprive the defendant of the time-value of the money." *SEC v. Anticevic*, 2010 WL 3239421 at *5 (citing *SEC v. Warde*, 151 F.3d at 50).[14] As the Second Circuit has noted:

The decision whether to grant prejudgment interest and the rate used if such interest is granted are matters confided to the district court's broad discretion, and will not be overturned on ap-

10. *Accord, e.g.*, *SEC v. Elliott*, 2011 WL 3586454 at *11 ("Once the SEC has satisfied its burden to demonstrate such an approximation, the burden shifts to the defendant to demonstrat[e] that he received less than the full amount allegedly misappropriated and sought to be disgorged." (quotations omitted)); *SEC v. Anticevic*, 2010 WL 3239421 at *5; *SEC v. Great Am. Techs., Inc.*, 07 Civ. 10694, 2010 WL 1416121 at *1 (S.D.N.Y. Apr. 8, 2010) (Chin, D.J.) (" '[T]he SEC bears the ultimate burden of persuasion that its disgorgement figure reasonably approximates the amount of unjust enrichment, [but] once the SEC has made a reasonable showing of a defendant's illicit profits, the burden shifts to the defendant to show that the disgorgement figure was not a reasonable approximation.' "), *aff'd*, 419 Fed.Appx. 23 (2d Cir. 2011); *U.S. SEC v. Universal Express, Inc.*, 646 F.Supp.2d at 563.

11. *Accord, e.g.*, *SEC v. Namer*, 183 Fed.Appx. at 121; *SEC v. Razmilovic*, 822 F.Supp.2d at 252–54; *SEC v. Boock*, 2011 WL 3792819 at *24; *SEC v. Elliott*, 2011 WL 3586454 at *11; *U.S. SEC v. Universal Express, Inc.*, 646 F.Supp.2d at 563.

12. *Accord, e.g.*, *SEC v. Shainberg*, 316 Fed. Appx. 1, 3 (2d Cir.2008); *SEC v. Boock*, 2011 WL 3792819 at *24 ("When two or more defendants collaborate in the illegal conduct and liability must be apportioned among them, courts have the discretion to find joint and several liability for any disgorgement re-

lief."); *SEC v. Lines*, 07 Civ. 11387, 2011 WL 3611350 at *4 (S.D.N.Y. June 7, 2011), *report & rec. adopted as modified on other grounds*, 2011 WL 3627695 at *2; *SEC v. Tecumseh Holdings Corp.*, 03 Civ. 5490, 2011 WL 2076466 at *1 (S.D.N.Y. May 24, 2011) ("Courts may impose joint and several liability where two or more defendants have collaborated in the illegal conduct at issue."); *SEC v. One Wall Street, Inc.*, 2008 WL 5082294 at *6 ("[I]t is well-established that 'the court has discretion to find joint and several liability when two or more defendants have collaborated in the illegal conduct....' ").

13. *Accord, e.g.*, *SEC v. Boock*, 2011 WL 3792819 at *24; *SEC v. Lines*, 2011 WL 3611350 at *4.

14. *Accord, e.g.*, *SEC v. Lines*, 2011 WL 3611350 at *4 ("[T]he court can award prejudgment interest on the amount awarded as disgorgement, in order to deprive the defendant of the time-value of the money."); *SEC v. Tecumseh Holdings Corp.*, 2011 WL 2076466 at *2 ("An award of pre-judgment interest is a proper exercise of judicial discretion, and courts typically impose pre-judgment interest in SEC enforcement actions."); *SEC v. Neurotech Dev. Corp.*, 2011 WL 1113705 at *3 ("Prejudgment interest on the disgorgement may also be awarded in order to deprive the defendant of the time-value of the money." (quotation omitted)).

peal absent an abuse of that discretion. In deciding whether an award of prejudgment interest is warranted, a court should consider (i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court. In an enforcement action brought by a regulatory agency, the remedial purpose of the statute takes on special importance.

*SEC v. First Jersey Sec., Inc.*, 101 F.3d at 1476 (citations & quotations omitted).[15] For SEC disgorgement, prejudgment interest is calculated using the Internal Revenue Service ("IRS") tax underpayment rate under 26 U.S.C. § 6621(a)(2). *SEC v. First Jersey Sec., Inc.*, 101 F.3d at 1476.[16]

## B. *Application of The Standards to This Case*

### 1. *Victoria Chen*

■ Judge Berman found that Chen violated Section 5 of the Securities Act when she sold 158,333 RECOV shares in 2005 without filing a registration statement. *U.S. SEC v. Verdiramo*, 890 F.Supp.2d 257, 264, 272, 10 Civ. 1888, 2011 WL 4344310 at *4, *11 (S.D.N.Y. Sept. 9, 2011) (Berman, D.J.); *see* pages 371–72 above. Based on Chen's brokerage records, the SEC calculates that Chen sold her RE-

COV shares for $40,284. (*See* page 371 above.) "Once the SEC has made a prima facie showing that the calculated gains are 'a reasonable approximation of profits causally connected to the wrongdoing' the burden shifts to the defendant to show the SEC's calculation was unreasonable." *SEC v. Shehyn*, 04 Civ. 2003, 2010 WL 3290977 at *7 (S.D.N.Y. Aug. 9, 2010); *see also* case cited on page 372 & n. 10 above. Chen, who is proceeding pro se,[17] has not filed any papers rebutting the SEC's disgorgement calculation, and the time to do so has passed. The Court therefore should order Chen to disgorge $40,284. *See, e.g., SEC v. Shehyn*, 2010 WL 3290977 at *7 (accepting the SEC's disgorgement calculation where the defendant failed to present rebuttal evidence).

■ In addition, prejudgment interest is appropriate to prevent Chen "from obtaining the benefit of 'what amounts to an interest free loan procured as a result of illegal activity.'" *See, e.g., SEC v. Credit Bancorp, Ltd.*, 99 Civ. 11395, 2011 WL 666158 at *1 (S.D.N.Y. Feb. 14, 2011); *see also* case cited on page 373 & n. 14 above. Using the IRS underpayment rate, the SEC calculates that prejudgment interest on Chen's disgorgement through October 31, 2011 is $16,453. (Dkt. No. 121: Conway 11/4/11 Aff. Ex. 1: Chen Prejudgment Interest Report.)[18] Accordingly, the Court should order Chen to pay $16,453 in prejudgment interest.

15. *Accord, e.g., SEC v. Credit Bancorp, Ltd.*, 2011 WL 666158 at *3; *SEC v. One Wall Street, Inc.*, 2008 WL 5082294 at *7; *SEC v. Mandaci*, 00 Civ. 6635, 2004 WL 2153879 at *13 (S.D.N.Y. Sept. 27, 2004).

16. *Accord, e.g., SEC v. Elliott*, 2011 WL 3586454 at *11 ("Prejudgment interest is generally calculated at the rate used by the Internal Revenue Service for interest on underpaid taxes under 26 U.S.C. 6621(a)(2) because [t]hat rate reflects what it would have cost to borrow the money from the government and therefore reasonably approximates one of the benefits the defendant derived from its fraud." (quotations omitted)); *SEC v. Lines*, 2011 WL 3627695 at *2 ("[A] court may

award prejudgment interest on the disgorged funds, calculated by applying the Internal Revenue Service tax underpayment rate . . . ."); *SEC v. Neurotech Dev. Corp.*, 2011 WL 1113705 at *3; *SEC v. Anticevic*, 2010 WL 3239421 at *5.

17. Chen has been pro se since her original attorney, Gregory Bartko, was suspended from practicing law for violating Section 5 of the Securities Act. *U.S. SEC v. Verdiramo*, 890 F.Supp.2d at 262, 2011 WL 4344310 at *2.

18. The Court has reviewed the relevant IRS's underpayment rates and has "spot checked" the SEC's prejudgment interest calculations

### 2. *Vincent Verdiramo*

■ Judge Berman found that Vincent Verdiramo violated Section 5 of the Securities Act when he sold 109,000 RECOV shares in 2005–2006 without filing a registration statement. *U.S. SEC v. Verdiramo*, 890 F.Supp.2d 257, 264, 267, 10 Civ. 1888, 2011 WL 4344310 at *4, *7 (S.D.N.Y. Sept. 9, 2011) (Berman, D.J.); *see* pages 371–72 above. Based on Vincent Verdiramo's brokerage records, the SEC calculates that he sold his RECOV shares for $42,938. (*See* page 371 above.) Vincent Verdiramo does not challenge the SEC's disgorgement calculations, admitting that he "sold shares of RECOV in 2005 and received approximately $40,000." (Dkt. No. 112: V. Verdiramo 10/25/11 Aff. ¶ 3.)

■ Nevertheless, Vincent Verdiramo claims that this money was not " 'ill-gotten' gains" because he had "voluntarily spent from [his] own funds more than $140,000 to repay loans owed by RECOV and to meet other corporate obligations." (V. Verdiramo 10/25/11 Aff. ¶¶ 3, 12.) Even if Vincent Verdiramo provided some evidence substantiating his self-serving claim (which he did not), it still would be rejected because "general business expenses may not be subtracted from the disgorge- ment amount, and it does not matter how a defendant chooses to spend his ill-gotten gains." *SEC v. Stone*, 06 Civ. 6258, 2009 WL 82661 at *4 (S.D.N.Y. Jan. 13, 2009); *accord, e.g., U.S. SEC v. Universal Express, Inc.*, 646 F.Supp.2d 552, 564 (S.D.N.Y.2009) (Lynch, D.J.) (" '[I]t is irrelevant for disgorgement purposes, how the defendant chose to dispose of the ill-gotten gains; subsequent investment of these funds, payments to charities, and/or payment to co-conspirators are not deductible from the gross profits subject to disgorgement.' ").[19] The Court therefore should order Vincent Verdiramo to disgorge $42,938.

■ Additionally, prejudgment interest is appropriate "to deprive the defendant of the time-value of the money." *SEC v. Anticevic*, 05 Civ. 6991, 2010 WL 3239421 at *6 (S.D.N.Y. Aug. 16, 2010) (citing *SEC v. Warde*, 151 F.3d 42, 50 (2d Cir.1998)); *see also* case cited on page 373 n. 14 above. Using the IRS underpayment rate, the SEC calculates that prejudgment interest through October 31, 2011 on Vincent Verdiramo's disgorgement is $15,827. (Dkt. No. 121: Conway 11/4/11 Aff. Ex. 2: V. Verdiramo Prejudgment Interest Report.) Because Vincent Verdiramo does not challenge the SEC's calculation,[20] the Court

pertaining to Chen, Meyer and Richard Verdiramo.

**19.** *See also, e.g., SEC v. Bocchino*, 98 Civ. 7525, 2002 WL 31528472 at *2 (S.D.N.Y. Nov. 8, 2002); *SEC v. Rosenfeld*, 97 Civ. 1467, 2001 WL 118612 at *2 (S.D.N.Y. Jan. 9, 2001); *SEC v. Benson*, 657 F.Supp. 1122, 1134 (S.D.N.Y.1987) ("The manner in which [defendant] chose to spend his misappropriations is irrelevant as to his objection to disgorge. Whether he chose to use this money to enhance his social standing through charitable contributions, to travel around the world, or to keep his co-conspirators happy is his own business.").

**20.** Both Vincent and Richard Verdiramo argue that prejudgment interest should not be imposed because the "SEC waited approximately five years after initiating its investigation to file this lawsuit," and it "should not be awarded with a windfall for the interest expense it created." (Dkt. No. 106: Verdiramo Disgorgement Br. at 3.) The Second Circuit has rejected this argument, noting that " '[e]ven if . . . litigation was protracted through some fault of the SEC,' the award of prejudgment interest for the entire period is proper because 'defendant . . . had use of unlawful profits for the entire period.' " *SEC v. Warde*, 151 F.3d at 50 (quoting *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1477 (2d Cir.1996), *cert. denied*, 522 U.S. 812, 118 S.Ct. 57, 139 L.Ed.2d 21 (1997)).

also should order him to pay $15,827 in prejudgment interest.

### 3. *Richard Verdiramo*

■ In formulating a disgorgement remedy, the court has discretion to impose "joint and several liability for combined profits on collaborating or closely related parties." *SEC v. AbsoluteFuture.com,* 393 F.3d 94, 97 (2d Cir.2004); *see also* cases cited on page 373 & n. 12 above. Judge Berman found that Richard Verdiramo violated Section 5 of the Securities Act "because he was a necessary and substantial participant in the unregistered sales of RECOV shares by Chen, Meyer, and his father, Vincent Verdiramo," noting that Richard Verdiramo "personally authorized and directed the issuance of the RECOV shares" to his co-defendants. *U.S. SEC v. Verdiramo,* 890 F.Supp.2d 257, 271, 273 n. 12, 10 Civ. 1888, 2011 WL 4344310 at *10, *11 n. 12 (S.D.N.Y. Sept. 9, 2011) (Berman, D.J.); *see* page 371 above.

Moreover, Judge Berman noted that, before the RECOV shares were issued in April 2005, Richard Verdiramo retained an attorney to "write an opinion letter to [RECOV's] Transfer Agent stating that the shares were exempt from Section 5's registration requirements." *U.S. SEC v. Verdiramo,* 890 F.Supp.2d at 271, 2011 WL 4344310 at *10. It was only relying on this opinion letter and RECOV's April 7, 2005 board resolution (signed by Richard Verdiramo) that RECOV's transfer agent issued the shares to co-defendants. *U.S. SEC v. Verdiramo,* 890 F.Supp.2d at 271, 2011 WL 4344310 at *10. Thus, without Richard Verdiramo's actions, his co-defendants would not have received the RECOV shares that they illegally sold.

Richard Verdiramo nevertheless claims that he should not be liable because he "*never* sold a single share of RECOV" and "did not receive a single dime as a consequence of the challenged transactions."

(Dkt. No. 106: Verdiramo Disgorgement Br. at 2; Dkt. 111: R. Verdiramo 10/25/11 Aff. ¶ 2.) This argument is meritless because a defendant may be jointly and severally liable for disgorgement even if he did not personally profit from the Section 5 violation. *See, e.g., SEC v. Platforms Wireless Int'l Corp.,* 617 F.3d 1072, 1098 (9th Cir.2010) (personal financial benefit is not a prerequisite for joint and several liability for disgorgement based on Section 5 violations); *cf., e.g., SEC v. Hirshberg,* Nos. 97–6171, 97–6259, 173 F.3d 846, 1999 WL 163992 at *4 (2d Cir. Mar. 18, 1999) (addressing insider trading: "[E]ven assuming that [defendant] received no direct benefit in exchange for his providing insider information, he may still be held liable for disgorgement of the illegally obtained profits of his tippees.").

Furthermore, Richard Verdiramo did profit from the unregistered sales. In the months after Meyer received the RECOV shares, which he subsequently sold for $224,547 (*see* page 371 above), Meyer transferred $175,000 out of his business account to the Verdiramo & Verdiramo Trust Account ("VVTA") (Dkt. No. 49: Conway 12/23/10 Aff. Ex. 13: VVTA Bank Records (three checks equaling $150,000); Dkt. 99: Conway 9/30/11 Aff. Ex. 1: VVTA Bank Records ($25,000 wire transfer)). The VVTA subsequently issued sixteen checks totaling $146,648 to Public Entity Acquisition Corp. ("PEAC"), Vincent Verdiramo's company. (Conway 12/23/10 Aff. Ex. 13: VVTA Checks to PEAC; Dkt. No. 112: V. Verdiramo 10/25/11 Aff. ¶ 10.) Over the next year, PEAC issued twenty-three checks totaling $177,815 to Ansam Inc. ("Ansam"), Richard Verdiramo's company. (Conway 9/30/11 Aff. Ex. 2: PEAC Checks to Ansam & Ex. 3: R. Verdiramo Dep. at 135–36.) Notably, Richard Verdiramo signed PEAC's checks issued to Ansam. (R. Verdiramo Dep. at 135–36.) Following the money trail, the SEC argues

that Richard Verdiramo "collaborated with his father, V. Verdiramo, and Meyer in order to profit from this illegal distribution." (Dkt. No. 98: SEC Disgorgement Br. at 5–6.)

Richard Verdiramo claims that these payments were unrelated to the RECOV shares, noting that Meyer paid PEAC $175,000 (through the VVTA) to purchase PEAC's controlling interest in RECOV. (R. Verdiramo 10/25/11 Aff. ¶¶ 21–22, 24.) Although Meyer never completed his purchase of PEAC's RECOV stock, Richard Verdiramo asserts that the $175,000 was "deemed earned when received" and "not refundable." (R. Verdiramo 10/25/11 Aff. ¶ 22.) Richard Verdiramo also claims that PEAC "was in the business of buying and selling public companies," and that at least $131,600 of the money PEAC gave Richard Verdiramo's company Ansem was "directly related to other deals." (R. Verdiramo 10/25/11 Aff. ¶ 31.) Without evidence supporting these claims, however, Richard Verdiramo has failed to rebut the SEC's claim that the money was payment for his involvement in the illegal transactions. *See, e.g., SEC v. Milligan,* No. 99–CV–7357, 2009 WL 1162633 at *2, *3 (E.D.N.Y. Apr. 29, 2009) ("Given the absence of any credible evidence that [defendant] and [a participant in the defendant's fraudulent scheme] had any business relationship with one another other than their mutual involvement in the fraudulent scheme to which [defendant] pleaded guilty, and the absence of any credible explanation for the transfers totaling $93,600 made by [the participant] to [defendant] other than that they constituted compensation for [defendant's] participation in the scheme, the court concludes that the plaintiff has met its burden of providing evidence to demonstrate that the disgorgement amount of

$93,600 that the plaintiff seeks is a 'reasonable approximation of profits causally connected to the violation.'" (quoting *SEC v. Patel,* 61 F.3d 137, 140 (2d Cir.1995)), *aff'd,* 436 Fed.Appx. 1 (2d Cir.2011). Consequently, the Court should find Richard Verdiramo jointly and severally liable for the combined profits of Chen, Meyer and Vincent Verdiramo—equaling $307,769.[21]

█ In addition, because Chen, Meyer and Vincent Verdiramo would not have obtained their illegal profits without Richard Verdiramo's assistance, Richard Verdiramo also should be jointly and severally liable for his co-defendants' prejudgment interest. *See, e.g., SEC v. Tecumseh Holdings Corp.,* 03 Civ. 5490, 2011 WL 2076466 at *2 (S.D.N.Y. May 24, 2011) (defendants held jointly and severally liable for disgorgement and prejudgment interest). As noted on pages 374–75, 376 above, Chen and Richard Verdiramo owe $16,453 and $15,827 in prejudgment interest, respectively. Additionally, using the IRS underpayment rate, the SEC calculates that prejudgment interest on Meyer's illegal profits through October 31, 2011 is $88,076. (Dkt. No. 121: Conway 11/4/11 Aff. Ex. 3: Meyer Prejudgment Interest Report.) Because Richard Verdiramo does not challenge the SEC's calculations, the Court should order him jointly and severally liable with Chen, Meyer and Vincent Verdiramo to pay $120,356 in prejudgment interest.

### CONCLUSION

For the reasons stated above, the Court should order (1) Victoria Chen to disgorge $40,284 and pay $16,453 in prejudgment interest; (2) Vincent Verdiramo to disgorge $42,938 and pay $15,827 in prejudgment interest; and (3) Richard Verdiramo

---

**21.** As noted on page 371 above, Chen sold her shares for $40,284, Vincent Verdiramo for $42,938 and Meyer for $224,547.

to be jointly and severally liable with Chen, Meyer and Vincent Verdiramo for $307,769 in disgorgement and $120,356 in prejudgment interest.

### *FILING OF OBJECTIONS TO THIS REPORT AND RECOMMEN-DATION*

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Richard M. Berman, 500 Pearl Street, Room 1320, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Berman (with a courtesy copy to my chambers). Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir. 1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Sec'y of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983).

November 10, 2011.